UNITED STATES, Appellee

v.

CHARLES E. ISBELL, Sergeant, U. S. Army, Appellant

1 USCMA 131, 2 CMR 37

## No. 21

### Decided February 5, 1952

1ST. LT. John D. Calamari, USA, for Appellant.

MAJ. George B. Springston and 1ST LT. Joseph C. Chandler, USA, for Appellee.

### Opinion of the Court

LATIMER, Judge:

Sergeant Charles E. Isbell, the accused, petitioned this Court to review the record of his conviction. We granted the petition for the purpose of reviewing some nine assignments of error claimed by him to have prejudicially affected his substantial rights. In order to appraise these contentions properly, we deem it advisable to make a complete statement of facts and set forth the sequence of events from the time of the offense until the completion of the trial.

Accused was tried by a general court-martial on specifications which charged larceny of $43.00; making a false official statement; attempting to induce one Cpl. Knapp to make a false official statement; and procuring one Mrs. Jensen to do likewise. The court-martial found him guilty of all charges and specifications and sentenced him to a dishonorable discharge, forfeiture of all pay and allowances, and confinement for three years. The convening authority disapproved the findings relating to the charge of procuring Mrs.

Jensen to make the statement and reduced the period of confinement to two years. The board of review in the office of The Judge Advocate General of the Army affirmed.

On the night of January 19, 1951, Sgt. William M. Phillips returned to his barracks after spending the evening at the Sergeant's Club. During the evening he had consumed considerable whiskey and was feeling ill when he arrived at his barracks. Before retiring, Phillips counted his money and ascertained that he had $43.00, which he placed in the pocket of his trousers. He then undressed and lay down on the bed. Accused, who had seen Phillips at the club, came into the room at about 11:00 o'clock and asked for a loan of $10.00, which was refused. He left, but returned about ten minutes later, renewed his request and was again refused. At this time accused assisted Phillips, who had become ill, and in so doing removed a handkerchief from the pocket of Phillips' trousers, which were lying on either the foot locker or the

bed. After helping Phillips to some extent the accused again left.

At about 11:50 that same night Corporal Harry L. Knapp was awakened by accused and invited to go out and get a cup of coffee. Knapp dressed and the two spent the remainder of the night visiting night clubs where accused bought whiskey and food. Accused paid all the bills, spending about $23.00. Together they returned to the post just before reveille on the morning of January 20th.

Sergeant Phillips awakened at about 6:50 on the morning of the 20th, and at that time discovered that his money was missing. He reported the loss to the company commander. Later that morning, he met and talked with the accused and Knapp and told them about the loss of his money. During that conversation accused told Phillips that he had received a loan of money from Knapp the night before. According to Knapp, after Phillips had walked away from them, accused admitted he had taken Phillips' money.

The following day the accused asked Knapp to tell the investigating officers that he had loaned the money to the accused. Later on, in what appears to have been a continuation of the same discussion, accused stated to Knapp, "If you feel you're getting into trouble, you just tell them the truth and then I'll own up to stealing the money." In a statement signed by accused on that same day he stated that Cpl. Knapp had loaned him $30.00 on the night of January 19th. After signing the statement accused again contacted Knapp, informed him the Criminal Investigation Division had permitted him to sign a statement containing the information that Knapp had loaned him $30.00 and that he, Knapp, was to make out a statement to the same effect. Knapp did not, either orally or in writing, make the statement as requested. Charges were preferred against the accused and an immediate investigation was ordered, but due to changes in the specifications a formal pre-trial investigation on all charges was not held until the 15th day of March, 1951. On that date, at the request of the accused,

Mrs. Jensen was called and questioned by the investigating officer and the accused. At that hearing she stated that on the night of January 19th, the accused had called her and asked if she would loan him $50.00; that she had told him she could not let him have that much, but would loan him $30.00; and that a few minutes later he came to her quarters and she gave him the $30.00. Subsequently, on the 19th day of March, Mrs. Jensen retracted that statement and signed another to the effect that she had not seen the petitioner on the night of January 19th, and that at no time had she loaned him $30.00. There is a dispute between the parties as to whether on the next day she rejected the last version and reverted to the story first told by her, but in all events no further sworn statements were given until the day of the hearing.

The trial commenced on the 22nd day of April, 1951, and the evidence as previously related was developed. Mrs. Jensen was called as a hostile witness for the government and testified in favor of the accused. Petitioner testified in his own defense, denied having taken the money, and sought to explain his possession of money on the night of January 19th by corroborating Mrs. Jensen's story to the effect that he called her on the telephone about midnight, then drove to her home and obtained a $30.00 loan from her.

Defense makes no claim that there is insufficient evidence to support the finding of guilty on the charge of larceny. It is, however, contended that the prosecution failed to prove that petitioner "attempted to induce" (solicited) Corporal Knapp to make a false statement. Before treating this contention directly, we turn to the question of whether solicitation of a false statement is a crime. Counsel calls our attention to page 258 of the Manual for Courts-Martial, 1949, which states the following principle: "Soliciting another to commit a crime is not an attempt, nor is mere preparation to do a criminal act." This is the general rule and we do not dispute the contention

**133**

that if the government were relying on an attempt to commit a crime the evidence might not sustain the finding. However, soliciting, as charged here, is a distinct offense and requires for its consummation no overt act in the sense needed to constitute an attempt. At common law it was an indictable offense to solicit another to commit a felony or other aggravated crime, even though the solicitation had no effect and the act counselled was never committed. United States v. Galleanai, 245 Fed 977, 978. In discussing this principle, many of the cases have stated the common law rule to include aggravated misdemeanors. In the case of Commonwealth v. Wiswesser, 3 A2d 983, 985, the Pennsylvania court stated:

". . . a solicitation to commit a serious misdemeanor harmful to the public peace or the public welfare or economy is a common law offense in this state . . . only such misdemeanors as by their nature make it unreasonable or illogical to treat them as a separate crime are excluded as an object of solicitation."

Clark and Marshall, Law of Crimes, 4th ed, par 111, states the rule to be as follows:

"Whether solicitation to commit a misdemeanor is indictable is not so clear. Some of the courts have made a distinction in this respect between felonies and misdemeanors, and have held that solicitation to commit a misdemeanor is not indictable at all, though they hold that it is an offense to solicit the commission of a felony. There is no more reason, however, for such a distinction in the case of solicitation than there would be for holding an attempt to commit a misdemeanor not to be indictable; and there are many cases in which an indictment for solicitation to commit a misdemeanor has been sustained. Thus indictments have been sustained for solicitation to commit embracery, for soliciting a person who has been summoned as a witness for the state in a criminal prosecution to absent himself, and

for solicitation to accept a bribe, or to pay a bribe."

Wharton, Criminal Law, 12th ed, sec 218, sums up the subject with the following statement:

"Are solicitations to commit crime independently indictable? They certainly are, as has been seen, when they in themselves involve a breach of the public peace as is the case with challenges to fight and seditious addresses. *They are also indictable where their object is interference with public justice. . . .*" (Italics supplied)

The offense set forth in the specification is comparable to that of soliciting a misdemeanor against public justice at common law. The 96th Article of War, 10 USCA § 1568, under which the solicitation was charged here, condemns conduct which is prejudicial to good order and discipline of the military service. There can be little question but that inducing another to give a false statement to an officer making an official investigation is an interference with military justice and is prejudicial to the service involved.

In connection with the evidence, the defense contends that the facts do not show petitioner intended that Cpl. Knapp should make a false statement under oath. This is bottomed on the reasoning that when petitioner told Knapp to tell the truth if Knapp feared trouble this removed an inference of intent on petitioner's part to have Knapp testify falsely under oath. However, contrary to the defense contention, there is evidence that petitioner wanted Knapp to make and stand by the alleged false statement. He importuned him to tell everyone who consulted him about the larceny that he had loaned the money to the accused. Subsequently, the accused made a written statement to the Criminal Investigation Division officer in which he stated Knapp had loaned him the money and he immediately thereafter solicited Knapp to sign a corroborative statement. Even though he, at one time, suggested that Knapp should change his story if trouble were to develop, the accused, never-

134

theless, intended that the false statement should stand until that point was reached. It is probable that if Knapp had acceded to the demand and made the statement suspicion would have been diverted from the accused, Knapp would never have been required to retract the story and the accused could escape prosecution. The offense was predicated upon the solicitation to make a false statement and the contingency of Knapp getting into trouble would not arise until after the offense had been completed. From this it is apparent that the evidence was sufficient to sustain the finding.

Defense relies, in addition, on a number of errors which allegedly occurred during the trial of the case. They are as follows: (1) That the law member erred in permitting the government to impeach Mrs. Jensen after having called her as a witness; (2) that it was error to admit testimony that the victim of the larceny suspected the accused; (3) that it was error to permit the victim to testify as to his habit of counting his money; (4) that it was error to permit a letter of Mrs. Jensen's to be admitted into evidence; (5) that it was error to characterize a statement made by the accused as a confession; (6) that it was error to permit testimony showing that a witness had made a prior consistent statement; (7) that hearsay testimony prejudicial to the accused was admitted in evidence; and (8) that it was error to permit a witness to testify from notes without a proper foundation having been laid.

We can dispose of the assignments of error shown under sub-headings (2), (3), (5), (6), and (8), supra, collectively, by stating they were either invited or not objected to; they were not singly or collectively prejudicial; and, their cumulative effect on the court was of no material importance. Without going into detail we point out that the testimony complained of in assignment (2) was given in response to a question asked by defense counsel. The evidence attacked by assignment (3) was not objected to; it was not an attempt on the part of the prosecution to prove an act by habit; it came in as part of a statement in which the witness stated positively that he counted the money he had in his wallet that night before going to bed; and knew the amount by denominations. The testimony that he had a habit of doing so when he had been drinking was gratuitously offered and was not assailed by objection or motion. The statement pointing up the issue involved in assignment (5) was made by the trial judge advocate in answer to a question by defense counsel concerning the purpose of introducing the exhibit, and no complaint was made about the answer; the law member immediately characterized the document in such a way as to indicate it was only a written statement made by the accused; the defense counsel denied having any intent to object to the document, it was introduced in evidence without objection and was before the court for proper evaluation. The testimony assailed in assignment (6) might be considered admissible as rehabilitating the previous testimony of the witness, but it could not be prejudicial in view of the fact that accused testified to the same state of facts and they were not in dispute. The circumstances surrounding the error stated in assignment (8) were that defense counsel asked the witness if he were using notes, the witness answered that he had some notes, but was testifying from memory, having refreshed his memory prior to his appearance; a short time later, in answer to a defense question, the witness answered that the notes he had were part of the pre-trial investigation report and he was using them to refresh his memory. They were available for use by counsel for the accused, and defense registered no complaint at that time. We find no reason at this late date for holding other than that the testimony, as given, was based on a revived present recollection and was therefore proper.

Turning to the more substantial issues, we meet first the question of whether the government could impeach

135

Mrs. Jensen, she having been called as a witness by it, and, if so, was the method used prejudicial, ██ no objection having been made. There is a general rule to the effect that a party is not permitted to impeach his own witness. Section 129b, Manual for Courts-Martial, 1949, applicable when this case was tried, explains the principle and exceptions on page 185 in the following language:

"The general rule is that a party is not permitted to impeach his own witness; that is, deliberately to attempt to discredit him. Such inconsistencies, however, as incidentally develop between witnesses for the same side are not impeachments. The general rule is subject to a few exceptions. If a party is compelled to call a witness who the law or circumstances of the case make indispensable, or if a witness proves unexpectedly hostile to the party calling him, the party is permitted to impeach the witness. In the latter case it must first appear that the witness is hostile and that the party calling him has been surprised by the evidence given by the witness. The witness may then be asked if he has previously made statements inconsistent with his testimony, the time, place and circumstances of the making of such statements being described to him in detail, and upon his denial, or if he testifies that he does not remember whether he made them or not, witnesses may be called to prove that he did make them."

The quoted section of the Manual states two principles under which a witness may be impeached. The first is indispensability, and the second, surprise. We believe Mrs. Jensen was a subject for impeachment at least under the first principle, which makes it unnecessary to express an opinion on the second. The specification of the additional charge alleged that the accused wrongfully and unlawfully procured her to make a false official statement to the effect that she had loaned him $30.00. Under the circumstances of this case, only two persons were able to testify regarding that occurrence. They were the accused and Mrs. Jensen. He could not be required to testify against himself and therefore Mrs. Jensen's testimony was essential to support the additional charge. Within the meaning of the wording of Paragraph 129b, supra, and the principles of impeachment, she was an indispensable witness.

We can not place our stamp of approval upon the method used in impeaching Mrs. Jensen, but the failure to proceed in the approved manner was not prejudicial. Counsel was endeavoring to impeach by showing prior inconsistent statement, utilizing for this purpose her contradictory statements at the pre-trial investigation, as embodied in an official report. In answers to questions concerning the signature on the document, Mrs. Jensen rather evaded the questions, neither admitting nor denying the signature. However, the substance of her testimony was that she signed the statement. Without fixing this for certain, counsel assumed the execution and thereupon read the contents of the statement, which placed it before the court. However, had he properly fixed the due execution of the statement and correctly phrased his questions, the same information would have been properly before the court. Furthermore, on cross-examination by defense counsel Mrs. Jensen testified at length as to her inconsistent statements and the reasons for making them. Conceding the irregularities in sequence, no evidence was placed before the court which was not otherwise properly in the record.

In an effort to show Mrs. Jensen's interest as a witness, the trial judge advocate offered in evidence a letter written by ██ Mrs. Jensen to the accused. Perhaps the offer was premature, and the method used not the best, but in this issue we brush against a possible defense theory. Counsel for the accused not only did not object to the introduction of the letter, but in effect, invited the court to accept it. It could be labeled as

an affectionate love letter, and might be considered as either beneficial or harmful to the accused. If used in one way, it cast him in the role of an alienator, while used in another it established a relationship which might account for Mrs. Jensen's loan of $30.00. Regardless of how we evaluate the letter, we can not go so far as to hold that an exhibit found in the record at the invitation of the accused can subsequently be used on appeal as a foundation for error. This issue involves more than a waiver, because it could reasonably be considered as an attempt to fortify the defense. While it may have involved a risk for the accused in that it contained more than was necessary to show the relationship, it was a chance which he must have calculated might be beneficial to him. That it may have been otherwise viewed by the court does not render its admission error.

The next contention raises the question of whether the admission of hearsay evidence prejudiced the accused. The error, as alleged, is in general terms, does not clearly identify the objectionable testimony, and fails to point out how, or in what way, the evidence was prejudicial. Concededly, there is much evidence in the record that is hearsay. Some of the evidence, without question, should have been rejected, but no objection was offered and no motion to strike made. Some of the questioned evidence was in rebuttal to Mrs. Jensen's claim that she had been coerced and threatened to change her story by the investigating officers. Some of the evidence was proper for that purpose. Other questioned evidence was admitted which tended to show consistency on the part of Mrs. Jensen in claiming that she loaned the money to the accused, but that would be beneficial to him. Some testimony consisted of statements made by witnesses to the investigating officers which were repetitious of competent evidence already in the record. Much more was brought out by defense counsel on cross-examination. Without attempting to isolate each statement in the record which might contain some hearsay evidence we are convinced that when consideration is given to the issues and the competent evidence in the record, no substantial prejudice was inflicted on the accused. Perhaps a little better sense of discrimination on the part of the law member might have segregated the admissible from the inadmissible. But, without objection by the accused and with his counsel trying to get in the record evidence which would corroborate the stories of his witnesses, we can not condemn the failure of the law member to scrutinize each statement, draw fine distinctions, and strike the tainted portions. We would not permit a finding to stand if it were based solely on hearsay evidence, but when, as here, each finding is based on substantial evidence and at the best the hearsay is either repetitious of competent evidence, bolstered by cross-examination, fortified in part by defense testimony, or admissible as an exception to the hearsay rule, we can not say that it prejudiced the defendant within the meaning of Article 59, Uniform Code of Military Justice, 50 USCA § 646, which provides that the finding or sentence of a court-martial shall not be held incorrect on the grounds of an error of law unless the error materially prejudices the substantial rights of the accused. We must place some burden on counsel for the accused to police the record, know the issues, and object to incompetent evidence, unless they believe it to be beneficial. If it can be considered as either favorable or unfavorable and a gamble is taken on its effect, then the accused must accept the consequences.

We have examined the entire record in the light of the contentions raised by the defense and must conclude that there are no errors which substantially prejudiced the rights of the accused. Accordingly, the decision of the board of review is affirmed.

Chief Judge QUINN and Judge BROSMAN concur.