**UNITED STATES, Appellee,**

v.

**Specialist Four Jerry L. SINGLETON, SSN 182–42–7249, United States Army, Appellant.**

**CM 436157.**

U. S. Army Court of Military Review.

1 March 1978.

---

Colonel Robert B. Clarke, JAGC, Lieutenant Colonel John R. Thornock, JAGC, Captain John E. Caulking, JAGC, and Captain Richard A. Pearson, JAGC, were on the pleadings for appellant.

Captain Robert D. Newberry, JAGC, Captain Richard A. Kirby, JAGC, Lieutenant Colonel R. R. Boller, JAGC, and Colonel Thomas H. Davis, JAGC, were on the pleadings for appellee.

Before JONES, MITCHELL and DeFORD, Appellate Military Judges.

## OPINION OF THE COURT

MITCHELL, Judge:

Contrary to his plea the appellant was convicted by a general court-martial of wrongfully taking (with design to steal money or other items of value) 91 first class letters from the Fort Carson Post Office in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934. He was sentenced to a bad-conduct discharge, forfeiture of $100.00 pay per month for eight months, confinement at hard labor for eight months and reduction to the lowest enlisted grade. The convening authority approved the sentence, but suspended the bad-conduct discharge and all confinement in excess of three months.

On Saturday, 8 January 1977, the appellant was performing duty as Charge-of-Quarters at the Fort Carson Post Office. At approximately 1000 hours Sergeant Collins, who was in the process of clearing post incident to his transfer to Korea, came into the post office to drop off some charts and catch up on some final work connected with his job in the mail facility. The appellant

was fulfilling his duties as CQ at the Postal Locater desk. During his stay Collins shared with the appellant a quantity of whiskey which he (Collins) had brought with him that morning.[1]

After going home for the evening meal Collins returned to the post office at about 1830 hours and rejoined the appellant. The sergeant, according to the appellant, then gave him "three hits of 'speed.' "[2] Collins categorically denied any possession whatsoever.

Later in the evening Sergeant Collins while searching for a calendar stand noticed a large number of opened letters in a lower drawer of the postal locator's desk. The CQ-appellant was away from the desk at the time. Wondering why the mail was left in an unsecured location Collins asked the appellant if he knew the reason. The appellant replied that he did not. After several minutes of conversation between the two concerning the opened letters, Collins advised the appellant that the discovery should be reported to the supervisor in charge of the post office, adding that it would "look better" if the appellant reported it than if he (Collins) did. He also advised the appellant that as Charge-of-Quarters he was responsible for the entire office, and consequently it was his singular duty to advise his supervisor without further delay. The appellant then stated that he "might have an idea who was responsible" and further that he probably could find out for certain "in a couple of days." Collins, nevertheless, continued to encourage the appellant to report the incident. The appellant then asked: "Well, would it matter if I had done it?" Collins replied in the negative, adding that the incident would still have to be reported.

Collins testified that this was the earliest point in time that he "in any way, shape, form or fashion even suspected he (the appellant) was involved with it at all, much less he himself doing it . . ." He

further testified that he simply interpreted the appellant's reluctance as evidence that he feared he would be blamed for something he did not do.

Still finding it difficult to believe that the appellant was culpably involved Collins again encouraged him to report the incident and asked why he had "done it." An excerpt from his testimony:

"Q. Now at the time that Specialist Singleton made those statements to you, did he say anything in regard to any money?

A. Yes, sir, during the end of the conversation, after he said he had done it and everything, thinking as a friend to him—I couldn't figure out why he had done it, I asked him, I said, 'Was it really worth it?', and he said, 'No, not really, because all I got out of it was $10.00.' "

The appellant then suddenly grabbed the letters, ran outside, and threw some on the top of an adjoining building and the remaining in a trash can. Collins begged him to retrieve the mail and to call his supervisor. The appellant's response was: "You've got me now so it doesn't really matter."

Thereupon, Collins went to a nearby telephone and reported the incident to the appropriate authorities.

After being advised of his Article 31 rights, the appellant chose to make a full confession to Agent Smith of the Army Criminal Investigation Division. Because of his reference to the consumption of whiskey and his alleged ingestion of the "speed" he was then taken to the post hospital for alcohol and drug tests.

The following morning he was escorted to the office of Postal Inspector Riutzel, U. S. Postal Service, Colorado Springs, Colorado, where the inspector agreed to investigate the matter on behalf of the United States Attorney for possible prosecution in the Federal District Court. After being advised of his rights under *Miranda v. Arizo-*

---

1. The actual amount consumed by the appellant is in dispute. Appellant says: "about 3 styrofoam cups." Collins says it was "a small shot of Jim Beam."

2. This is street parlance for three tablets of an amphetamine.

*na,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the appellant again confessed. His written confession included a brief recitation of Sergeant Collins' and Agent Smith's participation in the discovery and investigation of the offense.

## I

On appeal, the appellant argues that his "admission" to Sergeant Collins should not have been admitted at trial as that statement was obtained in contravention of his Article 31(b), UCMJ, rights. He also asserts that all subsequent confessions (both "verbal acts" and actual statements) were likewise inadmissible because they were "indelibly tainted by the initial events." We disagree for reasons that are set forth below.

Article 31(b), UCMJ, provides in pertinent part:

"No person subject to this chapter may interrogate, or request any statement from an accused or a person suspected of an offense without first informing him of the nature of the accusation . . . .."

The appellant's right to silence under this Article did not depend upon whether he was in fact innocent or guilty; it depended upon whether he was a suspect at the time he broke that silence. Sergeant Collins' testimony on the subject of suspicion is precise and without equivocation. He at no time, prior to the appellant's admission that "let the cat out of the bag", harbored the slightest suspicion that the appellant was personally involved in the mail theft. His sole concern was to encourage its disclosure to the appropriate authorities and thereby relieve the appellant of any consequent censure. We recognize that in the military setting in which we operate, the superior-subordinate relationship between the questioner and the questioned, regardless of the motives of the former, may be the moving factor in an accused's or suspect's decision to speak. It is the accused's or suspect's state of mind, then, not the questioner's that is important. *United States v. Dohle,* 24 U.S.C.M.A. 34, 51 C.M.R. 84, 1 M.J. 223 (1975).

Our review of the evidence, however, convinces us that the superiority of position or rank played no part in the conversation between the appellant and Collins. It was merely a verbal exchange between two close friends in which official status played no part. Interestingly, at no place in his testimony does the appellant even remotely suggest that the one grade differential between him and Sergeant Collins had the slightest influence on his state of mind, or his decision to admit that he had opened the letters. His defense counsel at trial asked but one question on that subject:

"Q. Now you've heard testimony, you've heard statements about the fact that you took these letters. At the time that this incident occurred what was your frame of mind?

A. Well, I don't exactly know, sir. I—I didn't remember messing with the letters until he [Collins] confronted me later on that night, when he opened the drawer. That's why I first denied it and then it started coming back to me."

Clearly, his answer sketches a faulty and loitering memory—not an impressible mind swayed by military rank or position.

Accordingly, we find that the appellant's statements made to Sergeant Collins, Agent Smith and Inspector Riutzel, were properly admitted into evidence by the military judge.

## II

During cross-examination, the prosecutor asked the appellant what the results of the blood and urine tests were. Over the timely objection of the defense counsel, the judge stated that the appellant could answer "if he knows." Appellant then testified that he "heard" [from his attorney] that the tests were negative.

This hearsay evidence concerning the laboratory results should not have been admitted. Automatic reversal, however, is not required where there exists substantial in-

dependent evidence of guilt.[3] We find that all available evidence of record shows that the appellant at the time of the offense was in complete control of his mental faculties and possessed the proper mental state to form the requisite criminal intent. We, therefore, find no prejudice from the inadmissible hearsay evidence that the tests were negative.

Accordingly, the findings of guilty and the sentence are affirmed.

Judge DeFORD concurs.

Senior Judge JONES not participating.

3. *United States v. Isbell*, 1 U.S.C.M.A. 131, 137, 2 C.M.R. 37, 43 (1952).