**UNITED STATES**

v.

**Senior Airman Sean M. BIGELOW,
United States Air Force.**

**ACM 33797.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 23 Dec. 1998.

Decided 17 May 2001.

Appellate Counsel for Appellant: Colonel Jeanne M. Rueth and Captain Bryan A. Bonner.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers, and Major Jennifer R. Rider.

Before YOUNG, Chief Judge, BURD, and PECINOVSKY, Appellate Military Judges.

## OPINION OF THE COURT

BURD, Judge:

On 23 November and 20–23 December 1998, the appellant was tried by general court-martial composed of officer and enlisted members at Incirlik Air Base (AB), Turkey. Contrary to his plea, he was found guilty of wrongfully distributing lysergic acid diethylamide (LSD) while receiving special pay under 37 U.S.C. § 310, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. He was found not guilty of wrongfully using LSD while receiving special pay. The adjudged and approved sentence consisted of a bad-conduct discharge, confinement for 1 year, forfeiture of all pay and allowances, and reduction to E–1.

The appellant raises two issues on appeal. He claims the nearly nine months between the conclusion of trial and the convening

authority action amounted to unreasonable post-trial delay. In his second issue, the appellant claims the military judge committed legal error by giving the court members a modified accomplice instruction. We disagree and affirm.

### I. Unreasonable Post–Trial Delay

The record of trial reveals the following facts. On 14 December 1998, a civilian court reporter (CR) assigned to the legal office at RAF Alconbury, England, completed the record of the initial trial session, held pursuant to Article 39(a), UCMJ, 10 U.S.C. § 839(a), on 23 November 1998. A paralegal from the office of the staff judge advocate (SJA) to the convening authority (CA), located at Aviano AB, Italy, was assigned to perform CR duties for the remainder and bulk of the trial. The appellant's trial ended on 23 December 1998. The paralegal CR returned to Aviano AB after the trial, finished transcribing the record by the end of February 1999, and mailed the transcribed portion of the record to the assistant trial counsel (ATC) at Incirlik AB on 1 March 1999. The CR received the record back from the ATC on 12 March 1999. The CR electronically mailed (e-mailed) a copy of the transcribed portion of the record to the military judge (MJ) on 15 March 1999. This copy was likely received by the MJ at her home station, Ramstein AB, Germany. On 18 March 1999, after receiving all the documents to be included with the record, the CR assembled and copied the record and delivered it personally to the MJ, who was then at Aviano AB. The MJ returned to Ramstein AB with the record and reviewed it there. The MJ then personally delivered the record to the ATC at Incirlik AB, on 6 April 1999, for correction. On 16 April 1999, the ATC certified he examined the record pursuant to Rule for Courts Martial (R.C.M.) 1103(i)(1)(A). (Apparently, the trial defense counsel was not given an opportunity to examine the record pursuant to R.C.M. 1103(i)(1)(B).)[1] On 21 April 1999, the record was transported to the CR at Aviano AB for changes consistent with the ATC's examination. The CR made the changes and mailed the record to the MJ

---

1. Given the post-trial submissions of the appellant and his counsel, we find this error harmless.

Article 59(a), UCMJ, 10 U.S.C. § 859(a).

on 28 April 1999. The record was received by the MJ shortly after 10 May 1999. The MJ returned the record for additional corrections on 30 June 1999. Those corrections were made and the MJ authenticated the record on 8 July 1999. The record is 593 pages long. The SJA completed his recommendation (SJAR) on 13 July 1999.[2] The appellant acknowledged receipt of a copy of the SJAR on 19 July 1999 and his trial defense counsel did the same on 3 August 1999. The defense counsel response to the SJAR is dated 11 August 1999 and a request for clemency is dated 12 August 1999. It was in these two documents that the defense first raised the issue of unreasonable post-trial delay. The Addendum to the SJAR is dated 20 August 1999. The CA action is dated 24 August 1999. The time from the end of trial to CA action is 244 days.

To succeed on a claim of unreasonable post-trial delay, an appellant must show specific prejudice, regardless of the length of the delay. *United States v. Lyn,* 49 M.J. 50 (1998) (mem.) (affirmed lower court ruling that 7–year delay without showing of specific prejudice not denial of speedy post-trial review) (citing *United States v. Bell,* 46 M.J. 351 (1997); *United States v. Santoro,* 46 M.J. 344 (1997); *United States v. Hudson,* 46 M.J. 226 (1997)). A showing of unexplained and inordinate delay, standing alone, is insufficient. The appellant "must demonstrate some real harm or legal prejudice flowing from that delay." *Bell,* 46 M.J. at 353 (quoting *United States v. Jenkins,* 38 M.J. 287, 288 (C.M.A.1993)).

In this case, we find the 244 days taken to prepare the record of trial and to take the necessary steps leading up to CA action to be neither unexplained nor inordinate. The trial participants were assigned to three different bases in three different countries in Europe. The record was lengthy—four volumes, totaling 593 pages, and, apparently from the number of times the MJ returned the record, contained numerous errors. Records of trial must report proceedings accurately. R.C.M. 1103(i)(1)(A). In this case, the MJ properly demanded an accurate record before authentication. The goal of achieving an accurate record sometimes requires additional time from what we would aspire to under optimum conditions. This is particularly true in our overseas theaters, where distances and modes of transportation complicate the effort to achieve as speedy post-trial processing of cases as possible.[3]

Even were we to find unexplained and inordinate delay, we find the appellant has failed to show specific prejudice. The appellant claims he was prejudiced by the delay for two reasons. First, he alleges he was prevented from applying for parole under Air Force Instruction (AFI) 31–205, *Corrections Program* (21 Jun 1999). We find nothing in this instruction to support the appellant's contention. AFI 31–205, in the form that existed during the post-trial processing of the appellant's case, and as it currently provides, does not prohibit a prisoner (other than one sentenced to death and, now also, one sentenced to life without the possibility of parole) from applying for parole at any time. *See* AFI 51–205, *The Air Force Corrections System,* ¶ 10.12 (9 Apr 2001). In arriving at this conclusion, we have considered an affidavit from Mr. James D. Johnston, Executive Secretary, Air Force Clemency and Parole Board (AFCPB), Secretary of the Air Force Personnel Council, which makes it clear that nothing prohibits a prisoner from applying for parole prior to CA action and nothing prohibits the AFCPB from reviewing a case prior to such action.[4]

---

2. We note the SJAR indicates the appellant was a member of the 39th Security Forces Squadron when he was actually a member of the 39th Supply Squadron. The correct unit of the appellant appears on all other material documents in the record. We find this error harmless. Art. 59(a), UCMJ.

3. An authentication of a record only extends to the transcript of the trial proceeding held before a particular trial judge. *United States v. Eubank,* 12 M.J. 752, 756 (A.F.C.M.R.1981). Given this, trial judges may find modern modes of communication, e.g., e-mail and telefax, useful to shorten the time necessary to review transcript drafts.

4. This affidavit was made a part of the record by our granting of appellee's motion to submit document.

Moreover, even if the appellant had applied for parole, divining the outcome of such application is speculation, and therefore, provides no basis for finding specific prejudice.

Secondly, the appellant claims the delay significantly impacted his opportunity for meaningful clemency by the CA because he was near his early release date from confinement. Again, the appellant asks us to speculate—on this second part of his claim of prejudice that the CA would have granted clemency or would have been more inclined to grant clemency if the CA would have acted earlier on his case. As with the first claim, such speculation is no basis for finding the "real harm or legal prejudice required" to grant relief. *Hudson*, 46 M.J. at 227. We find it noteworthy that the CA was aware of this issue when he took action approving the adjudged findings and sentence. While we are cognizant that appellants generally make full use of the license inherent in the right of appeal before this Court, we think a more pragmatic assessment of the appellant's chances of clemency during the post-trial processing of his case would lead to the conclusion that the delay in such processing enhanced those chances by giving the appellant an issue to raise in his submissions to the CA.

## II. Accomplice Instruction

The appellant claims the military judge committed legal error by providing the panel with a modified version of the accomplice instruction which specifically omitted the language regarding "the suspect credibility of accomplice testimony" required by *United States v. Gillette*, 35 M.J. 468, 470 (C.M.A. 1992). This claim is without merit.

■ A military judge has broad discretion to decide what instructions to give court members and we review that discretion for abuse. *United States v. Damatta–Olivera*, 37 M.J. 474 (C.M.A.1993). In deciding whether there has been an abuse of discretion, we examine the instructions as a whole to see if the instructions sufficiently address the issues and facts presented by the evidence. "The question of whether a jury was properly instructed is a question of law, and thus, our review is *de novo*." *United States v. Snow*, 82 F.3d 935, 939 (10th Cir.1996),

quoted in *United States v. Maxwell*, 45 M.J. 406, 424 (1996).

The appellant places considerable emphasis on the fact that the military judge refused the defense request to give the form accomplice instruction contained in Department of the Army Pamphlet 27–9, *Military Judges' Benchbook*, Instruction 7–10 (30 Sep 1996). Contrary to what the appellant would have us conclude, *Gillette* does not imbue this form instruction with talismanic qualities.

The holding in *Gillette* is that a military judge need only give an accomplice instruction when the evidence reasonably raises the issue and a party requests the instruction. *Gillette*, 35 M.J. at 470. Most importantly, *Gillette* rejected labeling a witness as an accomplice as a matter of law. *Id.* In so doing, the United States Court of Military Appeals, now the United States Court of Appeals for the Armed Forces (hereinafter CAAF) provided the framework for an accomplice instruction, requiring that it include guidance on how to determine whether a witness is an accomplice and "the standard instruction regarding the suspect credibility of accomplice testimony." *Id.*

We do not interpret *Gillette* to require the specific cautionary language of the form instruction fixated on by the appellant. First, in analyzing the instructions given by the trial judge in *Gillette*, CAAF said "[t]he fundamental principle that **accomplice testimony should be viewed with caution and skepticism** was clearly made known to the court members[.]" *Id.* at 470–71 (emphasis added). Secondly, the appellant's argument ignores subsequent decisions by CAAF that do not support the strident interpretation of *Gillette* that he advocates.

■ We view the decision whether to give an accomplice instruction and its wording as discretionary. In *United States v. Gittens*, 39 M.J. 328 (C.M.A.1994), CAAF interpreted *Gillette* to mean that a defense failure to request an accomplice instruction constitutes waiver, adding: "albeit there may be a case where a judge's failure to give such an instruction would be 'plain error.'" *Gittens*, 39 M.J. at 331 (citations omitted). They defined such plain error as "obvious and

substantial error that prejudicially influenced the deliberations of the members." *Id.* (citing *United States v. Fisher*, 21 M.J. 327, 328 (C.M.A.1986)). In *United States v. Loving*, 41 M.J. 213 (1994), *cert. granted on other grounds*, 515 U.S. 1191, 116 S.Ct. 39, 132 L.Ed.2d 920 (1995), *aff'd*, 517 U.S. 748, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996), CAAF held that if the evidence raises a reasonable inference that a witness may have been an accomplice, the military judge should allow the question whether the witness is an accomplice to be submitted to the court members with proper instructions upon request. *Id.* at 261. Most recently, in *United States v. Williams*, 52 M.J. 218, 222 (2000), CAAF, in considering the Discussion to the evidentiary rule of R.C.M. 918(c), cited *Gittens*, 39 M.J. at 331, stating: "(holding that military law **permits** a cautionary instruction on accomplice testimony)." (Emphasis added.)

■ The military judge gave the following accomplice instruction at the appellant's court-martial:

You are advised that a witness is an accomplice if he was criminally involved in an offense with which the accused is charged. The purpose of this advice is to call to your attention a factor bearing upon the witness' believability. An accomplice may have a motive to falsify his testimony in whole or in part, because of his self-interest in the matter, that is, a motive to falsify his testimony in whole or in part, because of an obvious self-interest.

For example, an accomplice may be motivated to falsify testimony in whole or in part because of his own self-interest in receiving immunity from prosecution or some sort of clemency in the disposition of his case.

Whether or not Airman Basic Beene, [Airman First Class] Herpin, or Senior Airman Bradley[,] who each testified as a witness, was an accomplice is a question for you to decide. If Airman Basic Beene, [Airman First Class] Herpin, or Senior Airman Bradley shared the criminal intent or purpose of the accused, if any, or aided, encouraged, or in any other way criminally associated or criminally involved himself in the offense with which the accused is charged, then he would be an accomplice.

As I indicated previously, it is your function to determine the credibility of all the witnesses, and the weight, if any, you will accord the testimony of each witness.

Although you should consider the testimony of an accomplice with caution, you may convict the accused based solely upon the testimony of an accomplice, as long as that testimony wasn't self contradictory, uncertain, or improbable.

As mentioned in the judge's accomplice instruction, she gave a credibility of witnesses instruction. That instruction said:

You have the duty to determine the believability of the witnesses. In performing this duty[,] you must consider each witness' intelligence, ability to observe and accurately remember, sincerity and conduct in court, prejudices, and character for truthfulness. Consider also the extent to which each witness is either supported or contradicted by other evidence; the relationship each witness may have with either side; and how each witness might be affected by the verdict. In weighing a discrepancy by a witness or between witnesses, you should consider whether it resulted from an innocent mistake or a deliberate lie. Taking all these matters into account, you should then consider the probability of each witness' testimony and the inclination of the witness to tell the truth. The believability of each witness' testimony should be your guide in evaluating testimony and not the number of witnesses called.

Additionally, the judge gave instructions on Airman Basic Beene's bad character for truthfulness, another on the three accomplices testimony being under grants of immunity, and yet another on prior inconsistent and consistent statements of witnesses.

Notwithstanding this thorough highlighting of the court members' duties in evaluating witness testimony, the appellant parses the accomplice instruction the judge gave, arguing that the case should be reversed because the judge said accomplice testimony **should be considered with caution** rather than **must be considered with great caution**. The maintenance of good order and discipline, while preserving the rights of service members, is not dependent upon such legalistic, hyper-technical analysis and we

will vigilantly resist such assaults upon common sense. We find the instructions in this case, taken as a whole, more than sufficiently address the issues and facts presented by the evidence. Under our required de novo review, we find the instructions legally sufficient. *Maxwell.*

Before we leave the issue of the accomplice instruction, we take the opportunity to remark on its waning viability. While we believe the instruction to be unnecessary given the present state in the evolution of our jurisprudence, we also view it as a potentially argumentative and improper comment on the evidence.[5] However, if judges choose to exercise their discretion and give an accomplice instruction, they must exercise care to avoid language that unfairly comments on the evidence. We have previously said that when a trial judge decides to give an accomplice instruction, the instruction given must be correct, especially when given over objection. *United States v. Gillespie,* 47 M.J. 750, 755 (A.F.Ct.Crim.App.1997). The United States Supreme Court has underscored this point as well. *See Cool v. United States,* 409 U.S. 100, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972) (wording of accomplice instruction on exculpatory witness placed improper burden on defense).

At the same time, military judges would do well to remember that we are mindful of our proper role as we fulfill our duties under Article 66(c), UCMJ, 10 U.S.C. § 866(c). In commenting on the majority decision in *Cool,* Justice Rehnquist remarked that the Court had engaged in the kind of "quest for error" which was said to be prohibited by Rule 52(a) of the Federal Rules of Criminal Procedure and by 10 U.S.C. § 2111. *Cool,* 409 U.S. at 105, 93 S.Ct. 354 (Rehnquist, J., dissenting) (citing *Bihn v. United States,* 328 U.S. 633, 638, 66 S.Ct. 1172, 90 L.Ed. 1484 (1946)). This observation applies equally to our Court and our superior courts by operation of Article 59(a), UCMJ, 10 U.S.C. § 859(a).

 Our system of military justice is sufficiently mature to permit trial judges to instruct court members in neutral terms. Advocacy in the courtroom is the responsibility of counsel, not the military judge. If a witness, for whatever reason, deserves jaundiced scrutiny by the court members, that is a matter appropriate for counsel argument. Where the counsel have developed the material factors bearing on witness credibility through their cases and argument, we see no need for the judge to go beyond a general instruction on witness credibility. *See United States v. Isaac,* 134 F.3d 199, 205 (3rd Cir.1998) (immunized witness or accomplice charge unnecessary when counsel have sufficiently alerted jury to credibility concerns). When the judge determines an accomplice instruction is appropriate, we suggest the following would suffice:

> Members of the court, you should view with caution the testimony of any witness who claims to have been culpably involved in the commission of the/any offense with which the accused is charged. Such a witness may have a stake in the outcome of the case, which may give him/her a motive to falsify his/her testimony. However, you should not reject such testimony without first evaluating its credibility. You should give it the weight you determine is appropriate, keeping in mind my other instructions on witness credibility.

*See* Colonel James A. Young III, USAF, *The Accomplice in American Military Law,* 45 A.F. L.Rev. 59, 94–96 (1998).

The approved findings of guilty and the sentence are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

---

5. For a historical discussion, *see* Colonel James A. Young III, USAF, *The Accomplice in American Military Law,* 45 A.F. L.Rev. 59 (1998). For an annotation of the related case law, *see* Sheldon R. Shapiro, J.D., *Necessity of, and Prejudicial Effect of Omitting, Cautionary Instruction to Jury as to Accomplice's Testimony Against Defendant in Federal Criminal Trial,* 17 A.L.R. Fed. 249 (1973). While an accomplice (likened by one of

our brothers to a "weasel" in *United States v. Young,* 11 M.J. 634, 637 (A.F.C.M.R.1981) (Mahoney, J., dissenting)) does not garner the sympathy we appropriately give a victim of sexual abuse, the accomplice instruction is analogous to the relic Lord Hale instruction in sex offenses. *See* Armand Arabian, *The Cautionary Instruction in Sex Cases: A Lingering Insult,* 10 Sw. U.L.Rev. 585 (1978).