UNITED STATES, Appellee

v.

Sean M. BIGELOW, Senior Airman
U.S. Air Force, Appellant

No. 01-0713

Crim. App. No. 33797

United States Court of Appeals for the Armed Forces

Argued February 26, 2002

Decided July 15, 2002

CRAWFORD, C.J., delivered the opinion of the Court, in which GIERKE, EFFRON, and BAKER, JJ., and SULLIVAN, S.J., joined.

Counsel

For Appellant:  Captain Patrick J. Dolan (argued); Lieutenant Colonel Beverly B. Knott and Lieutenant Colonel Timothy W. Murphy (on brief).

For Appellee:  Major Jennifer R. Rider (argued); Colonel Anthony P. Dattilo and Major Lance B. Sigmon (on brief).

Military Judge:  Mary M. Boone

THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.

Chief Judge CRAWFORD delivered the opinion of the Court.

On November 23 and December 20-23, 1998, Senior Airman (E-4) Sean M. Bigelow was tried by a general court-martial composed of officer and enlisted members at Incirlik Air Base, Turkey. Contrary to his plea, he was found guilty of wrongfully distributing LSD while receiving special pay, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 USC § 912a. On August 24, 1999, the convening authority approved the adjudged sentence of a bad-conduct discharge, one year's confinement, total forfeitures, and reduction to Airman Basic (E-1). The Air Force Court of Criminal Appeals affirmed the findings and the sentence. 55 MJ 531 (2001).

We granted review of the following issues:

> I. WHETHER THE MILITARY JUDGE ERRED BY GIVING A NONSTANDARD ACCOMPLICE INSTRUCTION CONTRARY TO THIS HONORABLE COURT'S DECISION IN UNITED STATES V. GILLETTE, 35 MJ 468, 470 (CMA 1992).
>
> II. WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED BY CONCLUDING, CONTRARY TO UNITED STATES V. GILLETTE, 35 MJ 468, 470 (CMA 1992), THAT MILITARY JUDGES ARE NOT REQUIRED TO GIVE THE STANDARD ACCOMPLICE INSTRUCTION WHEN THE ISSUE IS RAISED BY THE EVIDENCE.
>
> III. WHETHER THE NEARLY NINE MONTHS BETWEEN THE CONCLUSION OF TRIAL AND THE CONVENING AUTHORITY'S ACTION AMOUNTED TO UNREASONABLE POST-TRIAL DELAY.

We hold that the military judge did not abuse her discretion by failing to give the standard instruction in the Military Judges' Benchbook, Dept. of the Army Pamphlet 27-9 (Sept. 30,

2

1996)("Benchbook"), when she gave an accomplice instruction that satisfied the requirements of Gillette.  We also hold that the delay prior to the convening authority's action was reasonable.

FACTS - ISSUES I and II

Since three witnesses who admitted using and possessing LSD testified they were given LSD at a party by appellant, the defense counsel at a session outside the presence of the members asked for the standard Benchbook accomplice instruction.[1]  The

_____

[1] The "standard" instruction referred to in the granted issue, as set forth in the Benchbook, provides:

> You are advised that a witness is an accomplice if he/she was criminally involved in an offense with which the accused is charged. The purpose of this advice is to call to your attention a factor specifically affecting the witness' believability, that is, a motive to falsify (his)(her) testimony in whole or in part, because of an obvious self-interest under the circumstances.
>
> (For example, an accomplice may be motivated to falsify testimony in whole or in part because of his/her own self-interest in receiving (immunity from prosecution) (leniency in a forthcoming prosecution) (_____).)
>
> The testimony of an accomplice, even though it may be ((apparently) (corroborated) and) apparently credible is of questionable integrity and should be considered by you with great caution.
>
> In deciding the believability of (state the name of the witness), you should consider all the relevant evidence (including but not limited to (here the military judge may specify significant evidentiary factors bearing on the issue and indicate the respective contentions of counsel for both sides)).
>
> Whether (state the name of the witness), who testified as a witness in this case, was an accomplice is a question for you to decide.  If (state the name of the witness) shared the criminal intent or purpose of the accused, if any, or aided, encouraged, or in any other way criminally associated or involved himself/herself with the offense with which the accused is charged, he/she would be an accomplice whose testimony must be considered with great caution.
>
> (Additionally, the accused cannot be convicted on the uncorroborated testimony of a purported accomplice if that testimony is self-contradictory, uncertain, or improbable.)

defense objected to the judge's proposed accomplice instruction[2]

and urged her to give the standard Benchbook instruction.  They

---

> (In deciding whether the testimony of (state the name of the witness)
> is self-contradictory, uncertain, or improbable, you must consider it
> in the light of all the instructions concerning the factors bearing on
> a witness' credibility.)
>
> In deciding whether or not the testimony of (state the name of the
> witness) has been corroborated, you must examine all the evidence in
> this case and determine if there is independent evidence which tends to
> support the testimony of this witness.  If there is such independent
> evidence, then the testimony of this witness is corroborated; if not,
> then there is no corroboration.)
>
> (You are instructed as a matter of law that the testimony of (state the
> name of the witness) is uncorroborated.)

Benchbook, at para. 7-10.

[2] The military judge proposed and subsequently gave the following
accomplice instruction:

> You are advised that a witness is an accomplice if he was
> criminally involved in an offense with which the accused is
> charged.  The purpose of this advice is to call to your attention a
> factor bearing upon the witness' believability.  An accomplice may
> have a motive to falsify his testimony in whole or in part, because
> of his self-interest in the matter, that is, a motive to falsify
> his testimony in whole or in part, because of an obvious self-
> interest.
>
> For example, an accomplice may be motivated to falsify testimony in
> whole or in part because of his own self-interest in receiving
> immunity from prosecution or some sort of clemency in the
> disposition of his case.
>
> Whether or not Airman Basic Beene, [Airman First Class] Herpin, or
> Senior Airman Bradley[,] who each testified as a witness, was an
> accomplice is a question for you to decide.  If Airman Basic Beene,
> [Airman First Class] Herpin, or Senior Airman Bradley shared the
> criminal intent or purpose of the accused, if any, or aided,
> encouraged, or in any other way criminally associated or criminally
> involved himself in the offense with which the accused is charged, then
> he would be an accomplice.
>
> As I indicated previously, it is your function to determine the
> credibility of all the witnesses, and the weight, if any, you will
> accord the testimony of each witness.
>
> Although you should consider the testimony of an accomplice with
> caution, you may convict the accused based solely upon the testimony of

argued that the military judge's proposed instruction weakened the standard instruction. The military judge reviewed the standard instruction in the Gillette case and concluded that her instruction on accomplice testimony would be clearer for the court members. She also gave the following instruction on credibility of witnesses:

> You have the duty to determine the believability of the witnesses. In performing this duty[,] you must consider each witness' intelligence, ability to observe and accurately remember, sincerity and conduct in court, prejudices, and character for truthfulness. Consider also the extent to which each witness is either supported or contradicted by other evidence; the relationship each witness may have with either side; and how each witness might be affected by the verdict. In weighing a discrepancy by a witness or between witnesses, you should consider whether it resulted from an innocent mistake or a deliberate lie. Taking all these matters into account, you should then consider the probability of each witness' testimony and the inclination of the witness to tell the truth. The believability of each witness' testimony should be your guide in evaluating testimony and not the number of witnesses called.

Additionally, the judge instructed the members that all three accomplices testified under grants of immunity and that any prior inconsistent and consistent statements of witnesses could be considered as to their credibility. She omitted the following admonishment from the standard instruction: "The testimony of an accomplice, even though it may be apparently corroborated and apparently credible, is of questionable

---

an accomplice, as long as that testimony wasn't self contradictory, uncertain, or improbable.

5

integrity and should be considered by you with great caution."
The military judge's instruction admonished the members once
that they must consider the testimony of an accomplice with
"caution," whereas the standard instruction admonishes the
members twice to consider accomplice testimony with "great
caution."  The military judge's instruction also omitted the
portion of the standard instruction that covers how to determine
if accomplice testimony is corroborated.

### DISCUSSION - ISSUES I and II

Article 51(c), UCMJ, 10 USC § 851(c), requires specific
instructions to be given by the judge.  Article 36, UCMJ, 10 USC
§ 836, grants the President the authority to prescribe
"[p]retrial, trial, and post-trial procedures, including modes
of proof" for courts-martial.  "[S]o far as ... practicable,"
these rules should "apply the principles of law and the rules of
evidence generally recognized in the trial of criminal cases in
the United States districts courts, but which may not be
contrary to or inconsistent with" the UCMJ.

While the prior Manuals for Courts-Martial contained a
provision concerning accomplice testimony, the present Manual
does not.  Paragraph 153a, Manual for Courts-Martial, United
States, 1969 (Rev. ed.), provided:

> Also, a conviction cannot be based upon
> uncorroborated testimony given by an alleged
> victim in a trial for a sexual offense or upon

6

> uncorroborated testimony given by an accomplice
> in a trial for any offense, if in either case the
> testimony is self-contradictory, uncertain, or
> improbable.

A similar provision also appeared in paragraph 153a, Manual for Courts-Martial, United States, 1951.  However, by 1984, the President had deleted this from the binding portion of the Manual and placed it in a non-binding Discussion section.  The Discussion to RCM 918(c), Manual for Courts-Martial, United States (2000 ed.),[3] provides:

> Findings of guilty may not be based solely on
> the testimony of a witness other than the
> accused which is self-contradictory, unless the
> contradiction is adequately explained by the
> witness.  Even if apparently credible and
> corroborated, the testimony of an accomplice
> should be considered with great caution.

The subject of accomplice testimony is not addressed expressly in the text of the Manual for Courts-Martial, nor is it expressly addressed in the text of the Federal Rules of Criminal Procedure.

While finding "the better practice [is] for courts to caution juries against too much reliance upon the testimony of accomplices," the Supreme Court recognized "there is no absolute rule of law preventing convictions on the testimony of accomplices," even though there is no cautionary instruction, and did not reverse the trial judge for failure to give such a

---

[3] This version is identical to the one in effect at the time of appellant's court-martial.

cautionary instruction.  Caminetti v. United States, 242 U.S. 470, 495 (1917).

Some federal judges, including Chief Judge Bazelon in a separate opinion, have advocated a mandatory accomplice instruction and voiced concern that absent such an instruction, an innocent individual might be convicted.  United States v. Kinnard, 465 F.2d 566, 573 (D.C. Cir. 1972).  Additionally, Judge Learned Hand, in a unanimous opinion, recognized that "in a close case," the failure to give such an instruction may "turn the scale."  United States v. Becker, 62 F.2d 1007, 1009 (2d Cir. 1933).  Seldom, however, has there been a reversal for the failure to provide such an instruction.  Consistent with the Supreme Court's opinion in Caminetti, federal courts generally have affirmed convictions despite the absence of such an instruction.  See, e.g., United States v. Shriver, 838 F.2d 980, 983-84 (8th Cir. 1988); United States v. McGinnis, 783 F.2d 755 (8th Cir. 1986); United States v. Gonzalez, 491 F.2d 1202 (5th Cir. 1974).

Gillette was the first time we examined instructions on accomplice testimony since the Manual provisions on the subject were moved to a non-binding Discussion section.  Following the "better practice" in other federal courts, this Court stated:

> [W]henever the evidence raises a reasonable
> inference that a witness may have been an
> accomplice or claims to have been an accomplice

8

> of the accused, and upon request of either the
> Government or defense, the military judge shall
> give the members a cautionary instruction
> regarding accomplice testimony.  First, the
> members shall be instructed how to determine
> whether a witness is an accomplice.  Second, they
> should be given the standard instruction
> regarding the suspect credibility of accomplice
> testimony.

35 MJ at 470.

Upon reflection, this language may have too broadly suggested a mandatory requirement for the standard Benchbook instruction where none existed.  The essential holding of Gillette is that the critical principles of the standard accomplice instruction shall be given, not necessarily the standard instruction itself, word for word.  Indeed, the standard instruction may in some cases be an overstatement or an over-simplification.  Appellant has not cited any instructions from civilian criminal law cases that employ language similar to the standard Benchbook instruction.

We hold that the military judge did not err in failing to give the standard accomplice instruction.  Her instruction made it clear to the members that accomplice testimony may be motivated by self-interest, including receiving a grant of immunity or clemency.  Additionally, she gave a credibility instruction and an instruction as to one of the witnesses regarding bad character for truthfulness.

FACTS - ISSUE III

The pertinent facts are uncontroverted and were assembled by the Court of Criminal Appeals as follows:

> On 14 December 1998, a civilian court reporter (CR) assigned to the legal office at RAF Alconbury, England, completed the record of the initial trial session, held pursuant to Article 39(a), UCMJ, 10 USC § 839(a), on 23 November 1998. A paralegal from the office of the staff judge advocate (SJA) to the convening authority (CA), located at Aviano AB, Italy, was assigned to perform CR duties for the remainder and bulk of the trial. The appellant's trial ended on 23 December 1998. The paralegal CR returned to Aviano AB after the trial, finished transcribing the record by the end of February 1999, and mailed the transcribed portion of the record to the assistant trial counsel (ATC) at Incirlik AB on 1 March 1999. The CR received the record back from the ATC on 12 March 1999. The CR electronically mailed (e-mailed) a copy of the transcribed portion of the record to the military judge (MJ) on 15 March 1999. This copy was likely received by the MJ at her home station, Ramstein AB, Germany. On 18 March 1999, after receiving all the documents to be included with the record, the CR assembled and copied the record and delivered it personally to the MJ, who was then at Aviano AB. The MJ returned to Ramstein AB with the record and reviewed it there. The MJ then personally delivered the record to the ATC at Incirlik AB, on 6 April 1999, for correction. On 16 April 1999, the ATC certified he examined the record pursuant to Rule for Courts-Martial (RCM) 1103(i)(1)(A). (Apparently, the trial defense counsel was not given an opportunity to examine the record pursuant to RCM 1103(i)(1)(B).) On 21 April 1999, the record was transported to the CR at Aviano AB for changes consistent with the ATC's examination. The CR made the changes and mailed the record to the MJ on 28 April 1999. The record was received by the MJ shortly after 10 May 1999. The MJ returned the record for

>       additional corrections on 30 June 1999. Those
>       corrections were made and the MJ authenticated
>       the record on 8 July 1999. <u>The record is 593
>       pages long</u>. The SJA completed his recommendation
>       (SJAR) on 13 July 1999. The appellant
>       acknowledged receipt of a copy of the SJAR on 19
>       July 1999 and his trial defense counsel did the
>       same on 3 August 1999. The defense counsel
>       response to the SJAR is dated 11 August 1999 and
>       a request for clemency is dated 12 August 1999.
>       It was in these two documents that the defense
>       first raised the issue of unreasonable post-trial
>       delay. The Addendum to the SJAR is dated 20
>       August 1999. The CA action is dated 24 August
>       1999. <u>The time from the end of trial to CA
>       action is 244 days</u>.

55 MJ at 532-33 (emphasis added)(footnotes omitted).

## DISCUSSION - ISSUE III

First, appellant contends that the "nine-month post-trial delay in this case was never satisfactorily explained, even after [he] complained about it." Final Brief at 13. He argues that it should not have taken the convening authority that long to take action in his case. Moreover, he argues, this "inordinate and unexplained" delay substantially prejudiced him because he "was denied the opportunity for parole -- parole which probably would have been granted for a non-violent offender with no prior criminal record." <u>Id</u>. (According to appellant, "a prisoner cannot leave on parole until the convening authority takes final action on his or her case.") In fact, the delay in this case has been explained.

11

The Court of Criminal Appeals concluded that "the 244 days taken to prepare the record of trial and to take the necessary steps leading up to the CA action [are] neither unexplained nor inordinate." 55 MJ at 533. The court felt this way because

> [t]he trial participants were assigned to three different bases in three different countries in Europe. The record was lengthy – four volumes, totaling 593 pages, and, apparently from the number of times the MJ returned the record, contained numerous errors. Records of trial must report proceedings accurately. RCM 1103(i)(1)(A). In this case, the MJ properly demanded an accurate record before authentication. The goal of achieving an accurate record sometimes requires additional time from what we would aspire to under optimum conditions. This is particularly true in our overseas theaters, where distances and modes of transportation complicate the effort to achieve as speedy post-trial processing of cases as possible.

Id.

The Court of Criminal Appeals then took its analysis a step further and found that, even if the 244-day-period constituted unexplained and inordinate delay, appellant still failed to show specific prejudice. First, the Court of Criminal Appeals explained:

> [H]e alleges he was prevented from applying for parole under Air Force Instruction (AFI) 31-205, Corrections Program (21 Jun 1999). We find nothing in this instruction to support the appellant's contention. AFI 31-205, in the form that existed during the post-trial processing of the appellant's case, and as it currently provides, does not prohibit a prisoner (other than one sentenced to death and, now also, one

12

> sentenced to life without the possibility of
> parole) from applying for parole at any time.
> See AFI 51-205, The Air Force Corrections System,
> ¶ 10.12 (9 Apr 2001).  In arriving at this
> conclusion, we have considered an affidavit from
> Mr. James D. Johnston, Executive Secretary, Air
> Force Clemency and Parole Board (AFCPB), Secretary
> of the Air Force Personnel Council, which makes it
> clear that nothing prohibits a prisoner from
> applying for parole prior to CA action and nothing
> prohibits the AFCPB from reviewing a case prior to
> such action.  Moreover, even if the appellant had
> applied for parole, divining the outcome of such
> application is speculation, and therefore,
> provides no basis for finding specific prejudice.

Id. at 533-34 (emphasis added)(footnote omitted).

We agree with the Court of Criminal Appeals that the 244-day delay was "neither unexplained nor inordinate," given the unusual circumstances in this case.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.