UNITED STATES, Appellee,

v.

Dudley C. WILLIAMS, Lieutenant
Commander, U.S. Navy,
Appellant.

No. 99–0052.
Crim.App. No. 97–0227.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 28, 1999.

Decided Jan. 20, 2000.

SULLIVAN, J., delivered the opinion of
the Court, in which CRAWFORD, C.J.,
GIERKE and EFFRON, JJ., and COX, S.J.,
joined.

For Appellant: *Lieutenant John D. Holden*, JAGC, USNR (argued); *Lieutenant Robert Attanasio*, JAGC, USNR.

For Appellee: *Lieutenant James E. Grimes*, JAGC, USNR (argued); *Colonel Kevin M. Sandkuhler*, USMC, and *Commander Eugene E. Irvin*, JAGC, USN (on brief).

Judge SULLIVAN delivered the opinion
of the Court.

During March and July of 1996, appellant, a naval officer, was tried by a general court-martial composed of a military judge sitting alone at Naval Legal Service Office, Rota, Spain. After entering mixed pleas, he was found guilty of numerous offenses related to the unlawful use and trafficking of contraband drugs. In particular, he was found guilty, contrary to his pleas, of soliciting an enlisted person to wrongfully distribute her-

oin, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to a dismissal, confinement for 12 years, and total forfeitures. On February 4, 1997, the convening authority approved the sentence, and the Court of Criminal Appeals affirmed on July 9, 1998.

On May 5, 1999, this Court granted review on the following issue of law:

WHETHER THE EVIDENCE IS LE-GALLY SUFFICIENT TO SUSTAIN A CONVICTION FOR SOLICITATION (ADDITIONAL CHARGE IV) WHERE THE TESTIMONY OF THE GOVERN-MENT'S SOLE WITNESS, A CO–CON-SPIRATOR, WAS UNCORROBORATED AND INHERENTLY SUSPECT.

We hold that the evidence of record, viewed in its entirety, reasonably supported a finding of guilty beyond a reasonable doubt to the charged offense of solicitation. *See generally Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Caminetti v. United States*, 242 U.S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442 (1917).

Appellant was charged with and pleaded not guilty to the following offense:

Additional Charge IV: Violation of Article 134, UCMJ

Specification: In that Lieutenant Commander Dudley C. Williams, U.S. Navy, Commander, Fleet Air Mediterranean, on active duty, did, in the vicinity of Naples, Italy, on or about February 1995, wrongfully solicit Staff Sergeant Mark Kelly, U.S. Air Force, to wrongfully distribute heroin, a controlled substance, an offense under the Uniform Code of Military Justice.

The prosecution offered the testimony of former Chief Petty Officer Jeffrey Kendall to prove this offense. He testified as follows:

Q. Did he ever show you, or describe to you, any of the bags that he used to smuggle heroin?

A. I saw the first one and I saw the last one.

Q. How was it that you saw the first one?

A. I took him to the airport.

Q. And how was it that you saw the last one?

A. The last one when I went to Ossie's to—with the commander to do my transaction, they actually showed me a leather satchel. I can't describe it. It's like a brief case type thing with hand—retractable handles. It's made of regular leather and he said that that was the bag he had carried on his last trip.

Q. Did it look like it had had heroin in it?

A. It—it—I remember the stitches being open but I—I was pretty amazed that something that small could carry heroin in it.

Q. When you say that he had—he had aspirations to take over the drug business, did he ever discuss with you how he was going to do that?

A. Other than his pooling of resources, no.

Q. *Did he ever discuss with you recruiting other people?*

A. *Yes.*

Q. *What other people—what other people did he recruit to go to—*

A. *He tried to recruit a friend of mine.*

Q. Who was that?

A. Mark Kelly.

Q. Okay. Before we get to that—well, let's go right into that then, excuse me. Who is Mark Kelly?

A. Mark Kelly is a friend of mine that I met when I initially started working at PROTO.

Q. Okay. And you smoked crack cocaine with him?

A. I ultimately—I ended up smoking crack with him, yes.

Q. Okay. What was the first time that you smoked crack with him? Can you describe the circumstances?

A. We had—it was cold outside, probably around November. We had gone downtown looking for some cocaine, couldn't find any. I called Commander Williams on—on Kelly's cellular telephone and asked him what was up, he said, "Nothing". I asked him if he had anything, he said, "Yeah". I said, "Well, I'm with Mike

and Mark, do you mind if we come over"? he said, "No," and we shot to his house.

Q. *And what happened at his house?*

A. *We went up to his bedroom and smoked crack cocaine.*

Q. Had you ever taken illegal drugs with Kelly and Roger before you did it with Commander Williams?

A. We had—we had done—we had never smoked cocaine together, no.

Q. Had you ever sniffed cocaine together?

A. We did once, but it was after, it was probably a couple of weeks before that.

Q. How—how did it first come up, the idea of Kelly going to Turkey? What exactly happened?

A. *I had told Mike and Mark, you know, what the commander and I were up to and, of course, their—their reaction was disbelief.* Through the course of the next few months—I didn't actually tell them exactly what I was doing until after I had done it, you know, and it was—actually my first trip was relatively easy. It was quite easy. *After that we—we talked about it on occasion. The commander asked me if—if he thought I would—if he thought that I thought that Kelly would be interested in going to Turkey and I was very hesitant about that.* I didn't want to get them involved in it and I said, "Well, I don't know". *He said, "Why don't you ask them—ask him".* I said, "Okay". And, I hem-hawed around for a while and he quizzed me a few times if I had asked him and I said, "No, not really, you know, I'll get around to it". *Eventually, what happened was we were in the Raging Bull and the commander went up to Kelly and asked him if he was ready to go and Kelly said something like, "Go where?" and he said, "Are you ready to go, you got your passport?" and Kelly was like, "I'm not going to go".* And that was basically the end of it.

(Emphasis added.)

———

Appellant asserts that the evidence of record is legally insufficient to support his con-

viction for solicitation of an enlisted person to distribute heroin. He first argues that the evidence admitted did not establish sufficient facts to constitute solicitation as required by military criminal law. He further argues that this evidence was legally insufficient because it consisted of legally unreliable testimony.

Appellant's first argument focuses on the averred legal inadequacy of the testimony of Chief Kendall to establish his guilt of the charged offense of solicitation. He contends that "[t]here was no evidence presented that either Appellant or Chief Kendall ever specifically discussed drug distribution with SSgt [Staff Sergeant] Kelly." Final Brief at 10. He also argues that his purported statement to Kelly, "Are you ready to go, you got your passport?" does not reference drugs, nor does it discuss drug distribution. Finally, he notes his express denial on the record that he ever personally asked SSgt Mark Kelly to become involved in drug smuggling activities or asked Chief Kendall to ask SSgt Kelly to be involved.

■ "Solicitation" to commit a crime is usually prosecuted under Article 134, and we have approved the President's explanation of the elements of this offense as found in paragraph 105b, Part IV, Manual for Courts-Martial, United States (1995 ed.) (*see* 52 MJ at 129 n. 2). *See United States v. Carroll,* 43 MJ 487, 488–89 (1996). In proving this offense, the prosecution must show, *inter alia,* that the accused solicited or advised a certain person or persons to commit a certain offense under the Code, other than one of the four offenses named in Article 82, UCMJ, 10 USC § 882. *Id.* Solicitation in this context means an express or "implicit invitation to join in a criminal plan." *United States v. Oakley,* 7 USCMA 733, 735, 23 CMR 197, 199 (1957).

■ Admittedly, in the case at bar, it was not shown that appellant expressly invited SSgt Kelly to transport and deliver heroin. Nevertheless, it is long established that evidence of the entire context in which an alleged statement was made can be considered in determining its criminal nature as a solicitation. *See United States v. Isbell,* 1 USCMA 131, 134–35, 2 CMR 37, 40–41

(1952); *see also United States v. Oakley, supra.* Here, it was shown that, prior to the alleged solicitation, appellant and SSgt Kelly used drugs together, and SSgt Kelly was informed of appellant's and Chief Kendall's international drug smuggling operation, including Chief Kendall's drug buying trips to Turkey for appellant. It was also shown that, after the alleged solicitation, SSgt Kelley used words of rejection, suggesting his view that a solicitation had occurred. In this context, appellant's words to SSgt Kelly concerning possession of a passport and his readiness to go can reasonably be construed as an invitation to SSgt Kelly to join the previously disclosed criminal enterprise.

Appellant next asserts that the evidence of record is insufficient to support his conviction for solicitation because it was purportedly based solely on legally unreliable testimony. He argues that the uncorroborated testimony of an alleged accomplice who is "a chronic liar" is not legally sufficient to support his conviction of this offense. He cites *United States v. Lee,* 6 MJ 96 (CMA 1978), as authority for this rule, but he admits that contrary precedent exists. *See United States v. Westmoreland,* 31 MJ 160, 167 (CMA 1990). We reject his argument.

Prior to the 1984 Manual for Courts–Martial, the President, in paragraph 74(a)(2), Manual for Courts–Martial, United States, 1969 (Revised ed.) (Change 3 Sept. 1, 1980), stated:

> *Weighing evidence.* In weighing the evidence, a member is expected to utilize his common sense and his knowledge of human nature and of the ways of the world. In the light of all the circumstances of the case, he should consider the inherent probability or improbability of the evidence, and, with this in mind, he may properly believe one witness and disbelieve several witnesses whose testimony is in conflict with that of the one. A conviction cannot be based solely upon self-contradictory testimony given by a witness other than the accused, even if a motive on the part of the accused to commit the offense is shown, if the contradiction is not adequately explained by the witness in the witness testimony. *Also, a conviction cannot be based upon uncorroborated testimony given by an accomplice in a trial for any offense if the testimony is self-contradictory, uncertain, or improbable.* Even if apparently corroborated and apparently credible, testimony of an accomplice which is adverse to the accused is of questionable integrity and is to be considered with great caution. When appropriate, the above consideration should, upon request by the defense, be included in the general instructions of the military judge or the president of a special court-martial without a military judge.

(Emphasis added); *see also* para. 153(a), Manual for Courts–Martial, United States, 1951.

We note that the above Manual rule did not require corroborative evidence to support a conviction *whenever* an accomplice testified against an accused, *i.e.,* the traditional accomplice testimony rule. *See* 7 Wigmore, *Evidence* § 2056 at 414 n. 10 (Chadbourn rev.1978). Instead, it required corroboration to support a conviction only when the accomplice's testimony was "self-contradictory, uncertain, or improbable." This rule is the same as that followed in federal appellate courts, which generally allows convictions based on uncorroborated accomplice testimony. *Id.; see generally* 4 Orfield's Criminal Procedure Under the Federal Rules § 26:641–45 at 403–15 (2nd ed.1987). That rule too prohibits convictions based on uncorroborated accomplice testimony only when that testimony is *otherwise* unreliable on its face. *See Caminetti,* 242 U.S. at 495, 37 S.Ct. 192; *Orfield, supra* at 408–09; *United States v. Gardea Carrasco,* 830 F.2d 41, 44 (5th Cir.1987); *Lyda v. United States,* 321 F.2d 788, 794–95 (9th Cir.1963).

We also note that this Court has had some difficulty in determining whether the above Manual rule established a rule of legal sufficiency or merely a rule of evidentiary instruction. *See United States v. Scales,* 10 USCMA 326, 328, 27 CMR 400, 402 (1959); *United States v. Allums,* 5 USCMA 435, 438–39, 18 CMR 59, 62–63 (1955); *see generally* Wigmore, *supra,* §§ 2057 and 2059(d) at 417 and 438. We ultimately concluded that evidentiary sufficiency concerns were raised by this rule. *See United States v. Diaz,* 22

USCMA 52, 56–57, 46 CMR 52, 56–57 (1972). In the *Lee* case, cited by appellant, this Court recognized and applied the evidentiary sufficiency section of paragraph 153(a), the Manual predecessor of paragraph 74(a)(2). *See Lee,* 6 MJ at 97–98.

Nevertheless, at the time of appellant's trial, RCM 918(c), Manual, *supra* (1995 ed.), stated that "[f]indings may be based on direct or circumstantial evidence. Only matters properly before the court-martial on the merits of the case may be considered. A finding of guilty of any offense may be reached only when the factfinder is satisfied that guilt has been proved beyond a reasonable doubt." The Discussion of this Manual rule more particularly stated:

> Findings of guilty may not be based solely on the testimony of a witness other than the accused which is self-contradictory, unless the contradiction is adequately explained by the witness. *Even if apparently credible and corroborated, the testimony of an accomplice should be considered with great caution.*

(Emphasis added.)

Accordingly, the legal basis for the opinion of this Court cited by appellant as authority for his legal sufficiency rule did not exist at the time of his trial in 1996. *See Lee, supra* at 97; *cf. United States v. Gittens,* 39 MJ 328, 331 (CMA 1994) (holding that military law permits a cautionary instruction on accomplice testimony); *United States v. Gillette,* 35 MJ 468 (CMA 1992); *United States v. McKinnie,* 32 MJ 141 (CMA 1991); *see*

*generally Westmoreland,* 31 MJ at 166 (noting paragraph 74(a)(2) was omitted from the 1984 version of the Manual).

Moreover, even if this evidentiary insufficiency rule is still good law *(see United States v. Smith,* 13 USCMA 105, 119–20, 32 CMR 105, 119–20 (1962)(recognizing power of this Court to establish its own legal sufficiency rules under Article 67, UCMJ, 10 USC § 867 (1994)), it was not violated in this case. We have reviewed Chief Kendall's testimony on appellant's alleged solicitation of SSgt Kelly to determine whether it was self-contradictory, uncertain, or improbable. *See Westmoreland, supra* at 167; *Lee, supra* at 97. We conclude that it was not facially unreliable as delineated in this rule. *See Scales,* 10 USCMA at 328, 27 CMR at 402; *United States v. Bermea,* 30 F.3d 1539, 1552 (5th Cir.1994) ("Testimony is incredible as a matter of law only if it relates to facts that the witness could not possibly have observed or to events which could not have occurred under the laws of nature."). Lastly, appellant has proffered no authority for the proposition that his "chronic liar" attack on Chief Kendall's character for truthfulness alone is sufficient to render this witness' testimony "implausible" as a matter of law and, thus, insufficient for conviction under such a rule. *Id.* (neither grant of immunity nor testimonial inconsistencies stamp an accomplice's testimony as unbelievable as a matter of law).

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.