### UNITED STATES

v.

**David S. OHREE, Personnelman Second Class (E–5), U.S. Navy.**

**NMCM 99 00336.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 6 Oct. 1998.

Decided 23 Feb. 2000.

LT Mari–Rae Sopper, JAGC, USNR, Appellate Defense Counsel.

LCDR Philip Sundel, JAGC, USNR, Appellate Government Counsel.

Before DeCICCO, Chief Judge, TROIDL, Senior Judge, and ANDERSON, Appellate Military Judge.

DeCICCO, Chief Judge:

Petty Officer Ohree was tried by a general court-martial on 3 September and 5–6 October 1998. Contrary to his pleas, a military judge convicted him of conspiring to distribute heroin, making a false official statement, and distributing heroin in violation of Articles 81, 107, and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 907, and 912a (1994). The sentence consisted of a dishonorable discharge, confinement for 5 years, total forfeiture of pay and allowances, and reduction to pay grade E–1. The convening authority approved the sentence.

The appellant raises six assignments of error in this appeal. We have examined the record of trial, the assignments of error filed by appellate defense counsel and the appellant, and the Government's response thereto. We have concluded that the findings and sentence are correct in law and fact, and, with the exception of the erroneous application of Article 57(a), UCMJ, 10 U.S.C. § 857(a), no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

### Factual Sufficiency

The first assignment of error alleges that the evidence was factually insufficient to sustain the appellant's conviction of conspiracy to distribute heroin and the distribution of heroin. Specifically, the appellant argues that the prosecution failed to prove the requisite knowledge of the presence of the heroin necessary for conviction of the two offenses. This court must evaluate the evidence for legal and factual sufficiency. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987). The test for factual sufficiency is whether, after weighing the evidence in the record of trial, and making allowances for not having personally observed the witnesses, the Court is convinced of the appellant's guilt beyond a reasonable doubt. *Id.* at 325.

The testimony of the prosecution witnesses described the appellant's involvement

as a courier in an elaborate drug trafficking scheme to carry money to Turkey in exchange for heroin. In March 1995, the appellant was stationed in Naples, Italy. During that month, a sailor named Benjamin Nicks gave the appellant and another sailor (CTM3 Mooring) false NATO and TAD travel orders to travel from Italy to Turkey and return. Another individual by the name of RMSN Wales arranged the trip by purchasing the airline tickets and advising Mooring and the appellant what they were to do when they reached Istanbul, and how to return to Naples. Wales gave a camera bag and a backpack to both Mooring and the appellant to take on their trip to Istanbul. One of the appellant's bags contained $50,000 in cash that Nicks had counted personally. On arrival in Turkey, they were to call a telephone number and do as instructed by the person who answered. Mooring testified that on the way to the Naples airport, while in the car with the appellant and Nicks, he asked Wales for further details about the purpose of the trip. All Wales would tell him was "brown sugar," a term Mooring understood to be slang for heroin.

After arriving in Istanbul, Mooring and the appellant checked into a hotel and called the number Wales had given them. Within a short time, a man came to the hotel and took them to a house where Mooring saw the $50,000 in cash removed from the camera bag. Mooring did not know whether the appellant saw the cash being removed because he was watching a movie on television. They spent the night at the house, and the next day they were each given similar (or the same) camera bags and backpacks to carry back to Italy.

An agent of the Naval Criminal Investigative Service [NCIS] testified that Mooring admitted to him in November 1995 that he knew he was carrying narcotics to Italy, and had discussed it with the persons he met in Istanbul. Mooring said he was told he would be carrying ten kilograms (about 22 pounds) of heroin. Mooring told the agent that the appellant was present when this conversation took place. Mooring related that they were told how to position the bags on the airport x-ray machine to avoid detection of the nar-

cotics. The heroin was hidden inside the linings of the bags.

While at the airport in Istanbul awaiting their return flight to Italy, Mooring and the appellant met another service member named Luis Molina. Molina testified that he was making a trip to carry heroin from Turkey to Italy over the same weekend. He said Mooring appeared nervous because he knew he was carrying narcotics. Molina advised Mooring and the appellant not to appear nervous because it could tip off the authorities. He last saw them at the Rome airport when they parted ways on arrival in Italy. Molina was stationed in Gaeta, Italy.

When Mooring and the appellant returned to Naples, Wales was late in meeting them. While waiting for Wales to arrive, Mooring said he and the appellant talked about "brown sugar" and that Turkey is where it is made. Mooring thought the appellant knew what "brown sugar" was. After Wales and Nicks finally arrived, Wales paid Mooring $5,000 in $100 bills and gave an envelope to the appellant. Mooring did not see the contents of the envelope. He and the appellant gave Wales the camera bags and backpacks. On looking through the bags, Wales became upset and swore. He said something about there being 11 instead of 10 (kilograms of heroin).

NCIS interviewed the appellant in September and November 1995, and each time the appellant denied ever having traveled to Turkey. After the November denial, the NCIS agent handed the appellant a handwritten letter from Mooring who was then confined in Italian prison for drug trafficking. In the letter, Mooring informed the appellant that he had told the truth to NCIS. On reading it, the appellant became visibly upset, shook and breathed hard. The appellant said Mooring was lying. The appellant then said he had been to Turkey, but was there for a "command function."

The prosecution then presented the testimony of an agent of the Drug Enforcement Administration. This agent obtained a computer printout from Turkish immigration authorities indicating that the appellant and Mooring had entered Turkey on 18 March 1995 and exited on 19 March 1995.

Additionally, NCIS obtained a copy of the appellant's bank statement for the period January—March 1995. It disclosed that the appellant deposited $3,700 into his savings account at the Naples branch of the Navy Federal Credit Union on 20 March 1995 and another $1,100 on 21 March 1995. A representative of the credit union testified that based on his review of the deposit slips, the deposits were made with cash, as denoted by the teller's "CA" notation on the slips.[1]

The defense case centered on a presentation of the good military character of the appellant, his honesty, and the testimony of a Chief Petty Officer that he and the appellant had traveled through Turkey on a TAD trip in 1994. The appellant did not testify.

After a careful and thorough consideration of the record, we are satisfied beyond a reasonable doubt that the appellant conspired with the others to distribute heroin and that he distributed heroin to Wales on 19 March 1995, as alleged. Although there was no evidence that the appellant actually saw the heroin or that he made any statements establishing his knowledge definitively, the testimony that he discussed "brown sugar" with Mooring and his presence during the conversation with Molina indicate he knew exactly what he was doing. We also find the testimony of his accomplices was not facially unreliable. *See United States v. Williams,* 52 M.J. 218 (2000). Moreover, the testimony of the accomplices was corroborated by the evidence from the Turkish authorities concerning the appellant's entrance into and exit from Turkey on the dates Mooring and Nicks stated, as well as by the deposit of $4,800 in cash the two days after his return from Turkey. This amount was almost exactly what Mooring stated he had been paid to carry the heroin into Italy. The evidence in this case was not factually insufficient and the assignment of error is without merit.

### *Adequacy of the Staff Judge Advocate's Recommendation*

■ The second and third assignments of error allege two deficiencies in the Staff Judge Advocate's Recommendation [SJAR]. First, the appellant points out that the staff judge advocate in his post-trial recommendation to the convening authority did not advise the convening authority that both Nicks and Mooring testified under grants of immunity. However, such an omission was not erroneous.

RULE FOR COURTS-MARTIAL 1106(d)(3), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.) lists the required contents of the SJAR:

A) the findings and sentence adjudged,

B) any recommendation for clemency by the sentencing authority, made in conjunction with the announced sentence,

C) a summary of the accused's service record,

D) information concerning pretrial restraint,

E) action required pursuant to any pretrial agreement, and

F) a specific recommendation as to the action to be taken by the convening authority.

The SJAR may also contain a recommendation when an allegation of legal error is raised and any additional matters the staff judge advocate or legal officer deems appropriate to the case. R.C.M. 1106(d)(4) and (5).

The staff judge advocate was certainly free to mention the grants of immunity as optional matters under R.C.M. 1106(d)(5); however, he was not required to do so. Therefore, we find no error. Also, the convening authority was not required to review the case for legal errors or factual sufficiency. R.C.M. 1107(b)(1). Therefore, even had there been error, we would discern no possible prejudice to the appellant because of the omission of a statement concerning the grants of immunity. Such·a matter would have related to the weight accorded the testi-

---

1. The appellant's wife testified that she sent this cash to the appellant in the mail from her home in Richmond, Virginia. She said the $4,800 came from an account she held in guardianship for her father. However, examination of a state-ment of that account disclosed no such withdrawals during the pertinent timeframe. In fact, the balance in that account during January to March 1995 never exceeded $142.68.

mony of the witnesses and to factual sufficiency. This argument lacks merit.

The appellant also notes that the SJAR did not contain the clemency recommendation of the military judge. After announcing the sentence, the military judge stated: "The court recommends to the convening authority that he suspend and/or waive such forfeitures as to allow the children of the accused to receive $500 pay per month for the next six months." Record at 272. The day after trial, 7 October 1998, trial defense counsel submitted to the convening authority a request for the deferment/waiver of automatic forfeitures and for disapproval of adjudged forfeitures. In the first paragraph in bold-face type, he stated that "[t]he military judge specifically recommended that the convening authority defer $500 in forfeitures for six months, and pay such money directly for the benefit of his dependent children."

After receiving the SJAR, trial defense counsel indicated he had no comments to submit. Defense Counsel ltr of 5 Feb. 1999. In his action approving the sentence, the convening authority stated he had considered, *inter alia*, the SJAR, defense counsel's request of 7 October 1998, and the fact that the defense had no comments in response to the SJAR. He also stated that "[t]he request for disapproval of adjudged forfeitures in the amount of $500.00 is denied."

■ The omission of the military judge's recommendation from the SJAR was error. R.C.M. 1106(d)(3)(B); *United States v. Magnan*, 52 M.J. 56, 57 (1999). In *United States v. Clear*, 34 M.J. 129 (C.M.A.1992), the Court of Military Appeals stated that such an error was "plain error" requiring a new action. The Court has also stated that remand will generally be required when the staff judge advocate's recommendation omits the contents required by R.C.M. 1106(d). *United States v. Demerse*, 37 M.J. 488, 492 (C.M.A. 1993).

■ However, more recently, the Court has clarified the meaning of "plain error." Now, an appellant must not only establish that the error was plain and obvious and affected substantial rights under *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770,

123 L.Ed.2d 508 (1993), but he must also satisfy the additional requirement of Article 59(a), UCMJ, that the error has "materially prejudiced" his substantial rights. *United States v. Powell*, 49 M.J. 460, 465 (1998); *see also, United States v. Strange*, 45 M.J. 642 (N.M.Ct.Crim.App.1997), *petition denied*, 47 M.J. 65 (1997).

■ In this case, we do not find that the staff judge advocate's error materially prejudiced the appellant's substantial rights. Although the defense counsel did not point out the omission in his response to the SJAR, he informed the convening authority of the military judge's recommendation in his 7 October 1998 letter. The convening authority was therefore aware of the military judge's recommendation because he referred to this correspondence specifically in his action in approving the sentence. He also expressly denied the request contained therein. In the absence of evidence to the contrary, we find he gave the military judge's recommendation due consideration. Thus, while there was an error in the post-trial proceedings, such error did not constitute material prejudice to the appellant's substantial rights in light of the actions of the defense counsel. *United States v. Wheelus*, 49 M.J. 283, 289 (1998); Art. 59(a), UCMJ.

### Sentence Appropriateness

■ In the fourth assignment of error, the appellant argues that his approved sentence is inappropriately severe. We disagree. He was involved in the distribution of over 20 pounds of heroin near a military installation in exchange for a substantial amount of money. He was a part of an operation described by an NCIS agent in which U.S. Navy service members assigned to the Naples area (including Gaeta) were being solicited and targeted by African groups, or cells, to participate in drug trafficking. American sailors were targeted to be couriers, or "mules," to go into other countries, mainly Turkey, to bring back heroin in exchange for financial payment. Record at 120.

We view the appellant's involvement in this enterprise as a very serious matter, deserving severe punishment. *United States v. Trottier*, 9 M.J. 337 (C.M.A.1980). In addi-

tion, he not only conspired to distribute and did distribute heroin, but he also made a false statement to an investigator regarding his involvement. We have given individualized consideration to all of the circumstances of this case, including the appellant's prior record and family circumstances, but we find that the sentence is not inappropriately severe. *United States v. Healy*, 26 M.J. 394 (C.M.A.1988); *United States v. Snelling*, 14 M.J. 267 (C.M.A.1982).

### *Ineffective Assistance of Counsel*

■ In the fifth assignment of error, the appellant asserts that his trial defense counsel was ineffective for not introducing a logbook into evidence, for not filing a motion to dismiss for the prosecution's failure to introduce the logbook, for not moving to suppress the Turkish immigration record, and for not advising the appellant of his right not to confront one of the witnesses against him. Finally, he argues for reversal based on the cumulative-error doctrine.

In his affidavit, the appellant states that he told NCIS that he was on duty at his command on the date "in question," and that entries in a command logbook are made on assuming the watch and hourly thereafter. He said this logbook was taken by NCIS and never returned. He does not allege expressly that the log entries would have exculpated him from complicity in the conspiracy and heroin distribution. He also argues that his defense counsel should have moved to dismiss the charges when the prosecution did not introduce log entries at his trial.

The appellant has not provided specific times and dates of when he allegedly stood his duty or exactly what the logbook would show to establish his alibi. Therefore, we view his claims in this regard as speculative and conclusory observations that can be rejected. *United States v. Ginn*, 47 M.J. 236, 248 (1997). We also find no ineffective assis-

tance of counsel because defense counsel did not move to dismiss the charges. Without a specific declaration of what the entries would show, this assertion is also speculative. *United States v. Smith*, 48 M.J. 136 (1998).

■ We also find no merit in appellant's assertion that his counsel was ineffective for not moving, pursuant to 18 U.S.C. § 3505 (1994),[2] to suppress the record of the Turkish immigration authorities as to the dates of his entrance into and exit from Turkey. Defense counsel objected to the record at trial based on hearsay, but the objection was overruled. Record at 166. We find no serious deficiency in counsel's performance that warrants setting aside the results of this court-martial. *United States v. Scott*, 24 M.J. 186 (C.M.A.1987). Discovery in trials by court-martial is governed by R.C.M. 701, and not by federal discovery rules, such as 18 U.S.C. § 3505. Defense counsel was not ineffective for not moving to suppress the record under the federal rule. *United States v. Voorhees*, 50 M.J. 494, 500 (1999)(holding that ineffective assistance of counsel cannot be based on the failure to raise a claim that lacks legal merit).

We have also considered, and for similar reasons reject the appellant's assertion of ineffective assistance of counsel because defense counsel did not advise the appellant that Title 18, U.S.Code, gave him the right not to confront one of the witnesses. Finally, there was no cumulative error in this case.

### *Gorski Issue*

All of the appellant's offenses occurred prior to 1 April 1996. He has filed copies of leave and earnings statements that indicate he was paid as an E–1 at least as early as November 1998, the month after his court-martial. The convening authority did not act until 24 February 1999. In the action, the convening authority stated that automatic

---

**2.** Title 18, United States Code, § 3505(b) provides:

(b) At the arraignment or as soon after the arraignment as practicable, a party intending to offer in evidence under this section a foreign record of regularly conducted activity shall provide written notice of that intention to each other party. A motion opposing admission in

evidence of such record shall be made by the opposing party and determined by the court before trial. Failure by a party to file such motion before trial shall constitute a waiver of objection to such record or duplicate, but the court for cause shown may grant relief from the waiver.

forfeitures did not apply, but he did not comment on the reduction. In light of the holding of *United States v. Gorski*, 47 M.J. 370 (1997), the appellant's reduction to pay grade E–1 should not have been effected until the date of the convening authority's action. Therefore, the appellant may be entitled to restoration of some pay. It is directed that an appropriate authority determine the financial relief that is due to the appellant in light of this error, and that corrective action be taken to restore any lost pay.

In all other respects, the findings and sentence, as approved on review below, are affirmed.

Senior Judge TROIDL and Judge ANDERSON concur.