ERDMANN, Judge
(concurring in part and dissenting in part):
In United States v. Martinelli, 62 M.J. 52 (C.A.A.F.2005), we determined that the Child Pornography Prevention Act (CPPA) has no extraterritorial application. Under the factual circumstances presented in this case, I agree with the majority’s conclusion that Hays’ guilty pleas to the four CPPA-based specifications were improvident on that basis. 1 therefore concur with the majority in regard to Issue IV.
As noted in Martinelli, an improvident plea to a CPPA-based offense may, under certain circumstances, be upheld as provident to a lesser included offense under clauses 1 or 2 of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (2000). Under this rationale, the majority affirms all four CPPA-based specifications under clause 2 of Article 134. I also concur with the result reached by the majority in this regard.
I dissent, however, to the majority’s resolution of Issues I and II. Hays’ acts were not legally sufficient to constitute solicitation of another to commit carnal knowledge. Further, the military judge abused her discretion by admitting evidence of Hays’ uncharged misconduct and in admitting Agent Lanning’s testimony. I would therefore reverse the Army Court of Criminal Appeals on those issues and would dismiss the specification alleging solicitation of another to commit carnal knowledge.
I. Solicitation Charge

Definition of “Solicitation”

The majority accepts the Army Court of Criminal Appeals’ definition of solicitation as “ ‘any ... words or other device by which a person is requested, urged, advised, counseled, tempted, commanded or otherwise enticed or incited to commit a crime.’ ” United States v. Hays, slip op. at 11 (A.Ct.Crim.App. Jan. 22, 2004) (citation omitted). This goes well beyond the definition of solicitation found in the Manual for Courts-Martial, United States (2002 ed.)(MCM), and the pri- or definition adopted by this court. The President has defined solicitation as a “serious request or advice” to commit a crime. MCM, pt. IV, 116c.2. This court has further explained the term to mean an “express or implicit invitation to join a criminal plan.” United States v. Williams, 52 M.J. 218, 220 (C.A.A.F.2000).
The Army Court of Criminal Appeals has not felt constrained by these relatively straightforward definitions. In a series of opinions the Army court has adopted a number of terms to expand the definition of “solicitation”.[1] In this case the Army court adopted a number of these terms, i.e., “requested, urged, advised, counseled, tempted, commanded or otherwise enticed or incited.” Hays, slip. op. at 11.
The majority finds that these terms are synonymous with the term “request” and since the Army court also referenced the MCM requirement of a “serious request”, the terms merely offered additional explanation.[2] The term “serious request or advice” is not such a unique term that it needs such extensive supplementation. The question for the factfinder is whether the language in question constituted a serious request or ad *170 vice to commit an offense. The difficulty in using a laundry list of additional terms to further define “solicitation” is that it is likely to give the impression to members that solicitation is broader than defined by the President.
I would prefer to stay with the MCM definition that solicitation is a serious request or advice to commit an offense. However, even if I were to accept the majority’s definition, there is not sufficient evidence to affirm Hays’ conviction.

Legal Sufficiency of the Solicitation Charge

The test for legal sufficiency is whether “considering the evidence in a light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt.” United States v. Walters, 58 M.J. 391, 395 (C.A.A.F.2003). The elements that the Government had to prove in this charge were (1) that Hays made a serious request to Davis, (2) asking Davis to have sexual intercourse with a person under the age of sixteen (other than his spouse), (3) that Hays intended for Davis to agree to his request and to actually commit the crime they were discussing, and (4) that Hays’ conduct was prejudicial to good order and discipline or was of a nature to bring discredit to the armed forces. MCM, pt. IV, H 105.b.
The e-mail that provides the basis for the solicitation charge, states:
I hope that everything is working out with your 9 yo. Have you f***** her yet? If so, [d]o you have pix? Does your wife know that you do this type of stuff to little girls? Man you are not going to believe it when I adopt that little girl and send you a pix of me and her as I promised. I am going to do everything to her that you can imagine. And you will be the first to see, I promise you that much. I hope that you can find it in your heart to send me more pix as you have in the past week or so. If you send me more pix, I will be eternally grateful, and reward you greatly. Please send me more!!
The language of the e-mail reveals only that Hays seriously requested sexually explicit photographs of young girls. Although Hays initially appears to have been talking about a particular young girl, who may or may not have existed, the evidence is simply not sufficient to establish that Hays was seriously requesting Davis to commit sexual acts with the girl. As the e-mail does constitute a serious request for images of child pornography, a solicitation charge to that offense would be legally sufficient.
There is no question that sexual crimes against minors and the area of child pornography encompass a variety of despicable crimes for which society has justifiably proscribed serious penalties. We should not, however, allow our disgust for Hays’ actions color our judgment in evaluating the legal sufficiency of the charges. To conclude that Hays’ e-mail was a “serious request or advice” for Davis to have sexual intercourse with a specific young girl is a stretch that the evidence simply does not support. Accordingly, I would reverse Hays’ conviction for solicitation of another to commit carnal knowledge because the evidence against him was legally insufficient.
II. Evidentiary Challenges

Uncharged Misconduct

Evidence of “other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.” Military Rule of Evidence (M.R.E.) 404(b). As explained by the Supreme Court, the law seeks to prevent a finder of fact from concluding that an accused acted criminally in a specific instance simply because the accused is a bad or evil person:
The State may not show defendants prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad *171 general record and deny Mm a fair opportumty to defend against a particular charge. The overriding policy of excludmg such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.
Michelson v. United States, 335 U.S. 469, 475-76, 69 S.Ct. 213, 93 L.Ed. 168 (1948) (footnotes omitted); see also United States v. Humpherys, 57 M.J. 83, 90 (C.A.A.F.2002) (“ ‘[Ejvidence which is offered simply to prove that an accused is a bad person is not admissible’ under Mil.R.Evid. 404(b), Manual for Courts-Martial, United States (2000 ed.).”). Character evidence such as information that Hays sent out many e-mails asking for sexually explicit pictures of children, that he received responses to these e-mails, that he kept many of the responses in his inbox and that the images attached to these responses are offensive, is admissible only if it meets the three-prong test set out m United States v. Reynolds, 29 M.J. 105, 109 (C.M.A. 1989):
1. Does the evidence reasonably support a finding that appellant committed pri- or crimes, wrongs or acts?
2. What “fact of consequence” is made more or less probable by the existence of the evidence?
3. Is the probative value of the evidence substantially outweighed by the danger of unfair prejudice?
As the majority properly notes, the first prong of Reynolds is satisfied because there was sufficient evidence from which the fact-finder could conclude that Hays actually sent and received the e-mails m question.
The more difficult question is whether the military judge abused her discretion by concluding that the second and third prongs of Reynolds were also satisfied. The military judge and the majority conclude that the other e-mails and images satisfy M.R.E. 404(b) and the second prong because they were relevant to show Hays’ intent to solicit Davis to commit carnal knowledge. But, as with the “solicitation” e-mail, the oMy fact that is made more or less probable by the existence of the other e-mails in Hays’ account is the fact that Hays requested, collected, and viewed child pornography and that he was mvolved with a group of other individuals who shared the same intei’ests. The existence of other vulgar and sometimes illegal e-mails in Hays’ inbox does not make it more or less likely that Hays mtended to seriously request an individual he knew only by e-mail address to have sexual mtereourse with a particular girl under the age of sixteen. The military judge’s conclusion that Hays’ e-mail activities made it more likely that he mtended to solicit Davis lacks both a factual and legal basis and is erroneous.
Similarly, the “other wrongs” evidence in question cannot satisfy the third prong of Reynolds. The language and tone of Hays’ e-mails, as well as the frequency of Ms requests for pornography and the nature of the images he received, wMch mcluded bestiality and violent images, were prejudicial. The prosecution offered into evidence at least twenty-three exhibits consisting of e-mail messages asking for child pornography and multiple pornograpMe images. As discussed above, these e-mails and images have no probative value with respect to Hays’ intent to commit the crime with wMch he is charged. Accordingly, their prejudicial effect outweighs any probative value, and they should not have been admitted.

Agent Lanning’s Testimony

Hays challenged the admission of Agent Lanning’s testimony as impermissible profile evidence and also as testimony as to the ultimate legal issue, i.e., whether Hays solicited Davis to commit a crime. An expert may testify if his “scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence....” M.R.E. 702. An expert may offer opimons, but he may not state legal opinions. United States v. Benedict, 27 M.J. 253, 259 (C.M.A 1988); see also MCM, Analysis of the Military Rules of Evidence A22-50.
Lannmg testified that Hays wanted to “entice the individual, encourage the individual to [rape the child]” and that “he [Hays] wanted tMs rape of the 9 year old girl and *172 what he, essentially, wanted was photographs of that rape.” According to the definition of solicitation used by the military judge, this testimony went to the ultimate issue in this case. Lanning was not only offering expert testimony as to what the e-mail from Hays to Davis meant, he also offered his opinion on why Hays sent the e-mail — the very question to be decided by the finder of fact.
If Lanning was put on the stand merely to interpret the language of the e-mail, as the majority asserts, it is unclear why he was qualified as an expert. The e-mail is written in English, it is not written in code, and it does not discuss any technology or other specialized areas of knowledge for which expert interpretation would be necessary. The e-mail is a document that speaks for itself, and Lanning did not have any specialized skills that were needed to interpret it. See United States v. Houser, 36 M.J. 392, 398 (C.M.A.1993) (expert testimony not needed where factfinder is “qualified without such testimony ‘to determine intelligently and to the best possible degree the particular issue.’” (citations omitted)); see also United States v. Billings, 61 M.J. 163, 170 (C.A.A.F. 2005) (Erdmann, J., concurring in part and in the „result) (testimony of jeweler not necessary to educate members about characteristics of watch depicted in advertisement).
Lanning crossed the line between providing permissible expert testimony to testifying on the ultimate issue in the solicitation charge — that Hays intended to request Davis to rape the minor girl. This is inappropriate expert testimony. See United States v. Anderson, 51 M.J. 145, 151 (C.A.A.F.1999) (recognizing that an expert may not express an opinion on the “ultimate issue”). Accordingly, Lanning’s testimony should have been excluded as well and I therefore dissent from the majority’s holding on Issues I and II.
GIERKE, Chief Judge (concurring in the result):
I join the majority regarding Issues I and II. Regarding Issue IV, I share the result of the majority but not its analysis. As I explained in Martinelli,[1] I believe that the Child Pornography Prevention Act (CPPA) applies extraterritorially. Thus, I do not agree with the majority that Appellant’s pleas to the CPPA-based offenses for conduct occurring in Germany were improvident based on an absence of extraterritorial application of the CPPA. Rather, I would conclude that Appellant’s pleas to the CPPA-based specifications were improvident because the military judge used an unconstitutional definition of “child pornography” during the providence inquiry.[2] Accordingly, I agree with the majority’s result that the Army Court’s decision should be affirmed, and that specifications 1 through 4 of Charge IV should be amended by deleting reference to the CPPA and adding the phrase, “conduct which was service discrediting.”

. See United States v. Seeloff, 15 M.J. 978 (A.C.M.R.1983)(using "induce,” "entice” and "influence”); United States v. Hubbs, 20 M.J. 909 (A.C.M.R.1985) (using "counsel,” "tempt,” "command,” “incite,” "request,” "urge" and "advise”).

. One must wonder if Hays’ conduct constituted a "serious request”, what is the need for the additional terms?

. See United States v. Martinelli, 62 M.J. 52, 68-77 (C.A.A.F.2005)(Gierke, C.J., concurring in part and dissenting in part).

. See Ashcroft v. Free Speech Coalition, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002); United States v. O'Connor, 58 M.J. 450 (C.A.A.F. 2003).